Case 4:22-cv-00074   Document 25   Filed on 09/26/23 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
September 26, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LOURDES RIVERA, | § | |
| | § | |
|   Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-74 |
| | § | |
| ROSS DRESS FOR LESS, INC., | § | |
| | § | |
|   Defendant. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Ross Dress for Less, Inc.'s ("Ross") motion to compel arbitration and to dismiss this case. Ross's motion (Dkt. 14) is **GRANTED IN PART AND DENIED IN PART**. This case is **STAYED AND ADMINISTRATIVELY CLOSED** pending arbitration.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts set forth below are either uncontested or established by uncontroverted evidence. Plaintiff Lourdes Rivera ("Rivera") alleges in her live pleading that she suffered a severe back injury while working for Ross in May of 2020. (Dkt. 1-2 at pp. 2–3). Rivera has sued Ross for negligence and gross negligence, and Ross contends that Rivera's claims fall within the scope of a valid arbitration clause.

In 2013, Ross became a nonsubscriber to the Texas workers' compensation insurance system and replaced workers' comp benefits with an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), with Ross as the plan sponsor and administrator ("the Plan"). (Dkt. 14-2 at pp. 4, 12, 53). The

Plan contained a mandatory arbitration provision. (Dkt. 14-2 at p. 4). Rivera began working for Ross in October of 2014 and completed an online training course regarding the Plan in November of 2014. (Dkt. 14-2 at p. 149; Dkt. 14-3 at p. 2).

In May of 2019, Ross amended the Plan. (Dkt. 14-2 at p. 11). In April of 2019, before the amendment, Rivera completed another online training course regarding the amendments to the Plan. (Dkt. 14-2 at p. 148). In addition to the online training course, Ross provided its employees with copies of a Summary Plan Description ("SPD") for the amended Plan. (Dkt. 14-2 at p. 148). In order to complete the online training course, Rivera was required to type "Yes" into a prompt to confirm that she had received a copy of the SPD and that she had been advised of the amended Plan's arbitration provisions:



Dkt. 14-2 at p. 144 (highlighting added by Ross).

Rivera has also stipulated on the record that she received a copy of the SPD. (Dkt. 14-4 at p. 13).

The SPD set out in full the Plan's arbitration provisions. (Dkt. 14-2 at pp. 56–62; Dkt. 20-5 at pp. 77–83). The SPD explained that the Plan's arbitration provisions applied to any "covered claim" that an employee had against Ross. (Dkt. 20-5 at p. 143). Included in the definition of "covered claim" was:

> any legal or equitable claim by or with respect to an Associate for any form of physical or psychological damage, harm or death which relates to an actual or alleged accident, occupational disease, or cumulative trauma (including, but not limited to, claims of negligence or gross negligence or discrimination; claims for intentional acts, assault, battery, negligent hiring/ training/ supervision/ retention, emotional distress, retaliatory discharge, or violation of any other noncriminal federal, state or other governmental common law, statute, regulation or ordinance in connection with a job-related injury, regardless of whether the common law doctrine was recognized or whether the statute, regulation or ordinance was enacted before or after the effective date of this Policy).

Dkt. 20-5 at p. 142.

The SPD further explained in question-and-answer format that the amended Plan, including its arbitration provisions, would take effect on May 1, 2019:

> This program includes arbitration procedures to resolve other injury-related disputes between you and the Employer quickly and fairly. Arbitration is a process in which a skilled, independent arbitrator (similar to a judge) hears both sides of the situation and then makes a final and binding decision.
>
> **What are the advantages of arbitration?**
>
> **Protected Rights**
> Arbitration offers the same fundamental protections as a court of law. And the arbitrator, just like a judge or jury, may award you anything you might seek through a court of law.
>
> **Fast Decisions**
> When a problem is taken to court, it often takes years to conclude. During that time, your time, money and energy that could be better used are tied up with paying expensive legal fees and court costs, having delays and wading through endless paperwork. But with arbitration, hearings can often be scheduled within a month or so of your request and decisions can be reached in just a few months.
>
> **Fair Decisions**
> Courts hear all types of cases ranging from car accidents to divorces. Judges and juries do not specialize in solving work-related problems. But arbitrators do. More importantly, the arbitrator is objective and does not have any relationship with the Employer.
>
> **Does this Plan directly affect my health insurance or other benefits?**
>
> No. This Plan is a separate program from your health insurance and other benefits and applies only when injuries happen on the job.
>
> **When does this updated Plan take effect?**
>
> It is effective for all work-related injuries involving Texas Associates that occur on or after May 1, 2019.

Dkt. 20-5 at p. 92.

Though the SPD was written in English, the front cover of the SPD contained language in both English and Spanish explaining that the SPD contained an English-language summary of rights and benefits under the Plan and further advising employees to contact Ross's claims manager (whose contact information was provided) if they could not understand any part of the SPD:

> **NOTICE TO ENGLISH SPEAKING ASSOCIATES:** This booklet contains a summary in English of your plan rights and benefits under the Ross Dress For Less, Inc. Texas Injury Benefit Plan. If you have difficulty understanding any part of this booklet, contact the Claims Manager at 5130 Hacienda Drive, 3rd Floor, Dublin, California 94568-7579, (925) 965-4145. Office hours are from 8:00 a.m. to 5:00 p.m., Monday through Friday.
>
> **AVISO A LOS ASOCIADOS QUE NO HABLAN INGLES:** Este folleto contiene un resumen en inglés de los derechos y beneficios de su plan de Ross Dress For Less, Inc. Texas Injury Benefit Plan. Si tiene dificultad en entender cualquier parte de este folleto, contacte al Claims Manager en el 5130 Hacienda Drive, 3rd Floor, Dublin, California 94568-7579, (925) 965-4145. Las horas de oficina son de 8:00 a.m. a 5:00 p.m., de lunes a viernes.

Dkt. 20-5 at p. 85.

After her injury, Rivera made a claim under the Plan for benefits, and Ross has paid $5,633.05 of Rivera's medical expenses under the Plan. (Dkt. 14-2 at pp. 9, 150–56; Dkt. 14-4 at p. 12).

Rivera filed this lawsuit on December 9, 2021, and Ross, after filing a general denial in state court, removed the case to this Court on January 7, 2022. (Dkt. 1; Dkt. 1-2 at p. 1; Dkt. 1-3). The parties have taken three depositions; Ross noticed Rivera's deposition, and Rivera noticed depositions for two other fact witnesses. (Dkt. 16 at p. 23; Dkt. 14-4 at p. 1; Dkt. 20-5 at pp. 286, 320). Ross has propounded two interrogatories and four requests for production to Rivera. (Dkt. 20-5 at pp. 2, 256–57). Ross's discovery requests all seek information regarding photographs and a video that Rivera produced to Ross. (Dkt. 20-5 at pp. 2, 256–57).

Ross filed its motion to compel arbitration on March 22, 2023, shortly after the parties filed a successful joint motion for a continuance. (Dkt. 10; Dkt. 11; Dkt. 14). After

Ross filed its motion to compel arbitration, it filed an opposed motion to stay the case pending the Court's ruling on the arbitration issue, and the Court granted the motion to stay. (Dkt. 23; Dkt. 24).

Rivera opposes Ross's motion to compel arbitration, arguing that there is no enforceable arbitration agreement and, in the alternative, that Ross waived its right to compel arbitration by substantially invoking the judicial process. (Dkt. 16).

## LEGAL STANDARDS

In adjudicating a motion to compel arbitration under the Federal Arbitration Act ("FAA"),[1] courts in the Fifth Circuit conduct a two-step inquiry. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996). The first step is to determine whether the parties agreed to arbitrate the dispute in question, which the Court does by evaluating: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Id.* at 258. The second step is to determine "whether legal constraints external to the parties' agreement" foreclose the arbitration of the dispute. *Id.*

Under the FAA, ordinary principles of state law "governing the validity, revocability, and enforceability of contracts" determine whether there is a valid agreement to arbitrate. *Halliburton Energy Services, Inc. v. Ironshore Specialty Insurance Co.*, 921 F.3d 522, 530 (5th Cir. 2019). The parties agree that Texas contract law governs that determination in this case. (Dkt. 14 at pp. 17–18; Dkt. 16 at p. 17). Under Texas law, "[a]

---

[1] The parties agree that the FAA applies. (Dkt. 14 at p. 15; Dkt. 16 at pp. 15–16).

legally enforceable contract consists of (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." ! *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). More specifically, "[a]n employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it." *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex. 2006).

Every circuit but the Fifth Circuit utilizes the summary judgment standard of Federal Rule of Civil Procedure 56 to evaluate motions to compel arbitration under the FAA, though the Third and Eighth Circuits also appear to endorse a standard based on Federal Rule of Civil Procedure 12(b)(6) in cases where arbitrability is apparent from the face of the pleadings. *Air-Con, Inc. v. Daikin Applied Latin America, LLC*, 21 F.4th 168, 174–75 & n.7 (1st Cir. 2021) (collecting cases). The Fifth Circuit has not articulated the appropriate procedure, but district courts within it have used the Rule 56 standard. *See, e.g., Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443–44 (N.D. Tex. 2019). No party has proposed an alternative in this case, and there is no reason to think that the Fifth Circuit will break from the other circuits, so the Court will use the commonly employed Rule 56 procedure.

In the context of a motion to compel arbitration, the Rule 56 standard requires the movant to present evidence sufficient to demonstrate an enforceable agreement to arbitrate. *Jackson*, 389 F. Supp. 3d at 445 (citing *Clutts v. Dillard's, Inc.*, 484 F. Supp. 2d 1222,

1224 (D. Kan. 2007)). Once this burden has been met by the movant, the burden shifts to the non-movant to raise a genuine dispute of material fact for trial. *Jackson*, 389 F. Supp. 3d at 445 (citing *Hancock v. American Telephone and Telegraph Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). "In deciding whether the party opposing . . . compelled arbitration . . . has identified a genuine issue of material fact for trial, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002) (quotation marks omitted). However, "[j]ust as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.*

## ANALYSIS

The Court concludes that there is an enforceable arbitration agreement between Rivera and Ross and that Ross has not waived its right to seek arbitration. Rivera does not deny that her claims fall within the scope of the Plan's arbitration provisions.

      i.    *The arbitration agreement is enforceable.*

First, the Court concludes that an enforceable arbitration agreement exists between Rivera and Ross. Employment in Texas is presumptively at-will, *Midland Judicial District Community Supervision and Corrections Department v. Jones*, 92 S.W.3d 486, 487 (Tex. 2002), and there is no evidence in the record rebutting the presumption as to Rivera. "An at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law." *In re Dallas*

*Peterbilt*, 196 S.W.3d at 163. Under Texas law, the SPD, which Rivera admits that she received, constituted unequivocal notice of a binding arbitration agreement. *Id.* at 162–63 ("The six-page Summary and accompanying signed acknowledgment form notified Harris that arbitration would be required for resolving covered claims and specifically described which claims are covered under the plan."). Her continued employment constituted acceptance of those terms. *Id.*; *see also Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986) ("Generally, when the employer notifies an [at-will] employee of changes in employment terms, the employee must accept the new terms or quit."). !

Nevertheless, Rivera contends that Ross's motion to compel arbitration must be denied because she "speaks Spanish and the [online] training [regarding the amended Plan] was provided only in English." (Dkt. 16 at p. 10). Rivera invokes the alleged language barrier to analogize this case to *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791 (Tex. App.—El Paso 2013, no pet.) and to argue that any arbitration agreement between her and Ross was procedurally unconscionable. (Dkt. 16 at p. 19).

The Court finds Rivera's arguments unpersuasive. Even assuming that Rivera only speaks and reads Spanish, "[t]he only situations in which Texas courts have found an agreement to be procedurally unconscionable are those in which one of the parties was incapable of understanding the agreement without assistance, and the other party did not provide that assistance[.]" *Orozco v. JP Morgan Chase Bank, N.A.*, No. 4:20-CV-1961, 2020 WL 6044332, at *3 (S.D. Tex. Oct. 13, 2020) (quotation marks omitted); *see also BBVA Compass Investment Solutions, Inc. v. Brooks*, 456 S.W.3d 711, 724 (Tex. App.—Fort Worth 2015, no pet.) (collecting cases). Rivera has not pointed to any evidence

showing either that she requested assistance in understanding the agreement or that Ross refused such a request for assistance. To the contrary, on the front page of the SPD Ross specifically provided the name, address, and telephone number of its claims manager. (Dkt. 20-5 at p. 85). Accompanying the claims manager's contact information was a notice written in both English and Spanish informing Ross's employees that the SPD contained "a summary in English of . . . plan rights and benefits under the Ross Dress For Less, Inc. Texas Injury Benefit Plan" and advising employees who "ha[d] difficulty understanding any part of [the SPD]" to contact the claims manager. (Dkt. 20-5 at p. 85).

The Court disagrees with Rivera's characterization of *Delfingen* and concludes that *Delfingen* is distinguishable from this case. In *Delfingen*, there was evidence in the record showing that the employer had made an affirmative misrepresentation—namely, that the arbitration agreement signed by the plaintiff was the company's attendance policy—to an employee who did not speak English. *See Delfingen*, 407 S.W.3d at 803 ("The court could have also believed Valenzuela's testimony that Guzman told her the Arbitration Agreement was the company's policies, such as the attendance policy."). Here, Rivera provides no evidence showing such an affirmative misrepresentation; she relies entirely on the facts that "[her] understanding of English is severely limited and [that] the [online] training, which was supposed to explain the injury plan and arbitration agreement, was strictly in English." (Dkt. 16 at p. 19). As *Delfingen* itself explains, these facts are insufficient on their own to establish procedural unconscionability. *Id.* at 801 ("Standing alone, Valenzuela's illiteracy in English is insufficient to establish that the Agreement is unconscionable."). Rather, "[i]t has long been recognized" under Texas law that "illiteracy

10 / 16

or language barriers . . . will not relieve a party of the consequences of his contract." *Micocina, Ltd. v. Balderas-Villanueva*, No. 05-16-01507-CV, 2017 WL 4857017, at *6 (Tex. App.—Dallas Oct. 27, 2017, no pet.). Indeed, "[i]f a person is unable to read a contract, it is his duty to find some reliable person to read and explain it to him before he signs it." *Id.* (collecting cases).

Moreover, the arbitration agreement invoked by Ross is enforceable for another reason: under Texas law, Rivera has ratified it through her conduct. "Ratification occurs when a party recognizes the validity of a contract by acting under it, performing under it, or affirmatively acknowledging it." *Isaacs v. Bishop*, 249 S.W.3d 100, 110 n.9 (Tex. App.—Texarkana 2008, pet. denied). "Ratification may either be express or implied from a course of conduct[,]" and "[o]nce a party ratifies a contract, it may not later withdraw its ratification and seek to avoid the contract." *Id.* As previously mentioned, Rivera made a claim under the Plan for benefits after her alleged injury, and Ross has paid $5,633.05 of Rivera's medical expenses under the Plan. (Dkt. 14-2 at pp. 9, 150–56; Dkt. 14-4 at p. 12). Rivera's procurement, acceptance, and retention of those benefits ratified her agreement to be bound by the Plan's arbitration provisions. *In re Border Steel, Inc.*, 229 S.W.3d 825, 835 (Tex. App.—El Paso 2007, orig. proceeding) ("Furthermore, assuming for a moment that the [Arbitration] Agreement were unenforceable, Juarez ratified it by accepting and retaining benefits under the Plan following his injury."); *see also In re Leadership Ford, Inc.*, No. 05-99-00618-CV, 1999 WL 424303, at *4 (Tex. App.—Dallas June 25, 1999, orig. proceeding) ("Furthermore, we note that Hitzfeld accepted ERISA benefits after his injury. He did not return those benefits after he knew Leadership Ford intended to enforce

the plan's requirements. Consequently, Hitzfeld ratified his agreement to be bound by the plan and its arbitration requirement.").

The arbitration provisions of the Plan constitute an enforceable agreement between Rivera and Ross to arbitrate disputes—including this one—covered by those provisions.

> ii.   *Ross has not waived its right to seek arbitration.*

The Court also concludes that Ross has not waived its right to seek arbitration.

When the FAA applies, the question of whether a party has waived its right to arbitrate is governed by federal law. *International Energy Ventures Management, L.L.C. v. United Energy Group, Limited*, 999 F.3d 257, 266 & n.4 (5th Cir. 2021). For decades, the test in the Fifth Circuit for determining whether a party had waived its right to arbitrate was whether that party had substantially invoked the judicial process to the detriment or prejudice of the opposing party. *Forby v. One Technologies, L.P.*, 13 F.4th 460, 465 (5th Cir. 2021). However, federal law regarding waiver of the right to arbitrate recently underwent something of a sea change in most circuits, in that a party claiming waiver evidently no longer has the burden to show that it was prejudiced by the opposing party's actions. *See Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1712–13 (2022) ("[T]he Eighth Circuit was wrong to condition a waiver of the right to arbitrate on a showing of prejudice."). The Fifth Circuit has not yet issued an opinion analyzing the effect of *Morgan* on its waiver standard. Several district courts within the circuit have concluded that "the surviving test for waiver in this circuit is the remainder of [the] Fifth Circuit's prior test: whether the party has substantially invoked the judicial process." *Vollmering v. Assaggio Honolulu, LLC*, No. 2:22-CV-2, 2022 WL 6246881, at *12 (S.D. Tex. Sept. 17, 2022),

*adopted*, 2022 WL 6250679 (S.D. Tex. Oct. 6, 2022); *see also Yates v. Experian Information Solutions, Inc.*, No. 3:22-CV-143, 2023 WL 4747386, at *4 n.4 (S.D. Tex. July 25, 2023), *adopted*, 2023 WL 5279467 (S.D. Tex. Aug. 16, 2023); *Seifert v. United Built Homes, LLC*, --F. Supp. 3d--, 2023 WL 4826206, at *9 (N.D. Tex. 2023).

Until it receives further guidance from the Fifth Circuit or the Supreme Court, the Court will adopt the approach set out in *Vollmering*, *Yates*, and *Seifert* and follow the Fifth Circuit's prior test, minus the prejudice requirement. Under that test, a party waives its right to arbitrate by substantially invoking the judicial process. *See Forby*, 13 F.4th at 465. "The question of what constitutes a waiver of the right of arbitration depends on the facts of each case[.]" *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 576 (5th Cir. 1991) (quotation marks omitted).

The Court concludes that Ross has not waived its right to seek arbitration. To restate the relevant procedural history, Rivera filed this lawsuit on December 9, 2021, and Ross, after filing a general denial in state court, removed the case to this Court on January 7, 2022. (Dkt. 1; Dkt. 1-2 at p. 1; Dkt. 1-3). The parties have taken three depositions; Ross noticed Rivera's deposition, and Rivera noticed depositions for two other fact witnesses. (Dkt. 16 at p. 23; Dkt. 14-4 at p. 1; Dkt. 20-5 at pp. 286, 320). Ross has propounded two interrogatories and four requests for production to Rivera, all seeking information regarding photographs and a video that Rivera produced to Ross. (Dkt. 20-5 at pp. 2, 256–57). Ross filed its motion to compel arbitration on March 22, 2023, fifteen months after Rivera filed her lawsuit. (Dkt. 14). Before Ross filed its motion to compel arbitration, the parties filed a joint motion for a continuance, which was granted. (Dkt. 10; Dkt. 11). After

Ross filed its motion to compel arbitration, it filed an opposed motion to stay the case pending the Court's ruling on the arbitration issue, and the Court granted the motion to stay. (Dkt. 23; Dkt. 24).

Under Fifth Circuit cases addressing similar facts, Ross's actions do not amount to a waiver. In *Walker*, for instance, the defendant served the plaintiffs with interrogatories and requests for production, filed an answer in the lawsuit, and waited until thirteen months after suit was filed to move to compel arbitration. *Walker*, 938 F.2d at 576. The Fifth Circuit held that the defendant's "actions in federal court were not so substantial as to mandate that we overcome the legal presumption that parties who contracted for arbitration should be allowed to arbitrate." *Id.* at 578. *Walker* cited another Fifth Circuit case, *Tenneco Resins, Inc. v. Davy International, AG*, 770 F.2d 416 (5th Cir. 1985), in which the defendant served the plaintiff with interrogatories and requests for production, filed an answer in the lawsuit, moved for a protective order, and waited until almost eight months after suit was filed to move to compel arbitration. *Tenneco*, 770 F.2d at 420. The *Tenneco* panel wrote that "[w]hile it is true that [the defendant] waited almost eight months before moving that the district court proceedings be stayed pending arbitration, and, in the meantime, participated in discovery, this and other courts have allowed such actions as well as considerably more activity without finding that a party has waived a contractual right to arbitrate." *Id.* at 420–21 (collecting cases); *see also General Guaranty Insurance Co. v. New Orleans General Agency Inc.*, 427 F.2d 924, 927–28 (5th Cir. 1970) (cited in *Tenneco*) (not waiver when movant filed answer denying liability and counterclaims, attempted to implead parties, and allowed taking of two depositions before demanding arbitration); *J&S Construction Co.,*

*Inc. v. Travelers Indemnity Co.*, 520 F.2d 809, 809–10 (1st Cir. 1975) (cited in *Tenneco*) (defendant answered, demanded jury trial, answered interrogatories, permitted depositions, and waited thirteen months to move for stay without waiving right to arbitrate); *American Dairy Corp. v. Tantillo*, 536 F. Supp. 718, 721 (M.D. La. 1982) (cited in *Tenneco*) (defendants filed counterclaim, answered plaintiff's interrogatories, filed interrogatories and motion for production, and waited nine months before filing motion to stay).

By contrast, the cases on which Rivera relies are materially distinguishable. Rivera's strongest case is *Janvey v. Alguire*, 847 F.3d 231 (5th Cir. 2017), in which the party seeking to compel arbitration "moved to dismiss, filed an initial answer and amended answer, sent written discovery, and answered discovery." *Janvey*, 847 F.3d at 243 n.11. However, the movant in *Janvey* waited until three years after he got sued to file his motion to compel arbitration. *Id.* at 243–44. Moreover, Ross, unlike the *Janvey* movant, has not filed a motion seeking to dispose of this case on the merits. Accordingly, *Janvey* is insufficiently similar to this case to command a finding of waiver. Ditto *Brown-McKee, Inc. v. Fiatallis Construction Machinery, Inc.*, 587 F. Supp. 38 (N.D. Tex. 1984) and *Burton-Dixie Corp. v. Timothy McCarthy Construction Co.*, 436 F.2d 405 (5th Cir. 1971). In *Brown-McKee*, the party seeking to compel arbitration filed the very lawsuit that it later sought to arbitrate. *Brown-McKee*, 587 F. Supp. at 40. In *Burton-Dixie*, the party seeking to invoke the arbitration clause never moved to compel arbitration. *Burton-Dixie*, 436 F.2d at 408–09. Rather, the parties tried the case to a jury, and the losing party argued to the Fifth Circuit that the district court erred in denying its motion for judgment notwithstanding the verdict based on the winning party's failure to arbitrate. *Id.* at 407.

The Court concludes that Ross did not waive its right to arbitrate. Given the fact-specific nature of the determination, the Court will follow the Fifth Circuit cases addressing facts similar to those of this case and grant Ross's motion to compel arbitration.

## CONCLUSION

Defendant Ross Dress for Less, Inc.'s motion to compel arbitration and to dismiss this case (Dkt. 14) is **GRANTED IN PART AND DENIED IN PART**. This case is **STAYED AND ADMINISTRATIVELY CLOSED** pending arbitration.

SIGNED at Houston, Texas, on September 26, 2023.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE